MICHAEL K. RANDOLPH, PRESIDING JUSTICE FOR THE COURT
This matter is before the Court on the Petition for Writ of Certiorari filed by Rothell Chambliss. The Court has considered the petition and finds that it should be denied.
IT IS THEREFORE ORDERED that the Petition for Writ of Certiorari filed by Rothell Chambliss is denied.
SO ORDERED, this the 12 day of December, 2017.
TO DENY: WALLER, C.J., RANDOLPH, P.J., COLEMAN, MAXWELL, BEAM, AND CHAMBERLIN, JJ.
TO GRANT: KITCHENS, P.J., AND KING, J.
SEPARATE WRITTEN STATEMENT OBJECTING TO THE ORDER BY KITCHENS, P.J., JOINED BY KING, J.
NOT PARTICIPATING: ISHEE, J.
KITCHENS, PRESIDING JUSTICE, OBJECTING TO THE ORDER WITH SEPARATE WRITTEN STATEMENT:
¶ 1. I would grant Rothell Chambliss's Petition for a Writ of Certiorari . Chambliss was indicted for burglary of a dwelling in Jefferson County, Mississippi. During voir dire , the trial judge inquired whether any of the venire members knew the defendant. William Marks, Prospective Juror Number 7, after explaining that he hadn't known who the defendant would be when he came to court that day, went on to say, "Well, I'm not sure if it's been a year and a half, two years ago I had to be here in court to testify against [Chambliss] for breaking in ...." It was the prosecutor who instantly recognized the extreme hazard of the prospective juror's revelation that Chambliss, in the fairly recent past, had been in the same courthouse under an accusation of the very same kind of felony for which he was about to be tried. The assistant district attorney, Daniella Shorter, instantly interrupted the venireman in mid-sentence with, "Your Honor, may we approach?"
*633 ¶ 2. This prompted the trial judge to say, "You don't need to say anything else. You don't think you could be fair?" Mr. Marks responded, "Well, I don't think it would be-I couldn't say I wouldn't lean one way or the other." The court then said to him, "Well we need jurors that will be right on the 50 yard line and won't lean one way or the other. Thank you, sir." The court, with apparent oblivion to the likelihood that Marks's statement had contaminated the entire panel, proceeded with his part of the voir dire examination.
¶ 3. Upon the court's tendering the panel to the State for its voir dire examination, defense counsel Pamela Ferrington approached the bench, and, outside the hearing of the venire, moved for a mistrial on the following grounds: "Number 7 [Marks] said that he had been up here a year and a half ago when he had to testify against Rothell [Chambliss]. Everybody laughed. And we're ready to go and everything but not with this jury." There was no opposition to the motion voiced by the prosecutor.
¶ 4. Apparently deeming the incident insignificant, the trial judge said:
I don't see ... there was no explanation, there was no charge I think that in a situation where ... I think in a situation where there was any indication, I would consider your request more harmful, but in this situation, the Court finds that there was nothing said that would create or cause any prejudice to the defendant. There was no mention of what kind of case it was, civil, criminal or anything else. Of course, the record will indicate what was said, but the juror merely indicated that he was up here testifying in a case that Mr. Chambliss was involved in, and that's all that was said and I ... I don't believe that there had been any prejudice that has been created that would inhere against the defendant, so I'll overrule your motion.
¶ 5. Defense counsel attempted to provide clarification for the court as follows: "Your Honor, I don't mean to argue with you, but I wanted to make it clear that what I heard was that he did specifically say for breaking in my place or whatever, but it's the same kind of case that he specifically said that." The judge went on to say that he had heard what was said, adding, "[h]e was stopped immediately." The defense lawyer asked, "[c]an we see what the recorder picked up?" The judge reiterated, "I overrule your motion, Counsel." Defense counsel was not allowed to have the court reporter's tape recording of Marks's comment played for the judge.
¶ 6. Given the circumstances and the context in which Mr. Marks's comment occurred, the following statement by the trial judge to the venire members, during voir dire, is significant:
Ladies and gentlemen of the jury, Jefferson County, thank goodness, and the counties that I preside in are relatively small counties and folks know each other and I'm sure that there are many of you who know the defendant or members of his family; is that correct?
(Emphasis added.) It was against that backdrop that the court began his quest to ascertain which, if any, of the venire members knew the defendant. The first prospective juror to respond was Marks, Prospective Juror Number 7. Voir dire examination by the State revealed that nine of the prospective jurors, including Marks, had been victims of burglaries. It was the prosecutor who later observed, verbally and in the presence of the entire venire, that Marks had been the victim of a house burglary.
¶ 7. Without objection, Marks was challenged for cause by defense counsel. Her challenge was granted. After all the challenges *634 for cause and peremptory challenges had been made and ruled upon, defense counsel renewed the motion for a mistrial "... based on Juror Number 7's comments...." The court responded:
Well, I think the Court has covered that. With respect to the motion you made at the end of voir dire, it was not a contemporaneous objection; however, at the end of voir dire ... I didn't find after the entire voir dire ... I do find that there was no harmed [sic] caused. The witness testified he had been a witness of a case. There was no indication of a conviction or anything of that nature, so I find there was no prejudice that would inhere to the defendant based on the comments made by Juror Number 7. I again overrule your motion.
¶ 8. At least two of the venire members who had identified themselves as burglary victims-Prospective Jurors 27 and 28-ended up on the jury.
¶ 9. In the State's opening statement, the prosecutor began by saying, "Mr. Rothell Chambliss broke and entered the dwelling house of Michael and Patricia Dubois...." (Emphasis added.) In her summation, the prosecutor correctly recited the elements of burglary, which include "breaking and entering." She went on to say, "... he broke and entered that dwelling house...." (Emphasis added.) As she was entitled to do, during her argument, the prosecutor repeatedly emphasized that Chambliss had "broken" into the house. Of course, the jury was instructed by the trial court that the defendant's breaking into the house was one of the things the State had to prove beyond a reasonable doubt in order for the jury to convict.
¶ 10. In his post-trial motion for a new trial, or alternatively for a judgment notwithstanding the verdict (JNOV), Chambliss again raised the issue of Marks's improper comment during voir dire examination and assigned it as error. That motion was overruled:
Also, for the record, it was never pointed out to me that this witness ... this particular juror had been a witness before in any case and the Court had no idea of that before the trial began and the juror was actually asked that question and answered it truthfully, and that's what you would expect the juror to do, but I don't think that juror said anything that would taint the other jurors or have an effect whatsoever, and the Court hereby finds that there was no prejudice resulting from anything that he said.
¶ 11. I would grant Chambliss's Petition for Writ of Certiorari . Judge Pickard never instructed the jury to disregard the comment or undertook any sort of remedial action. This Court has affirmed denial of a mistrial following an improper comment by a venireperson because, after an objection from the defense, the trial court "instructed the jury to disregard the statement." Davis v. State , 530 So.2d 694, 697 (Miss. 1988).
¶ 12. This Court, in Grayson v. State , affirmed the trial court's denial of a mistrial after an improper remark by a venireperson, even though the trial court did not instruct the jury to disregard the comment. Grayson v. State , 806 So.2d 241, 253 (Miss. 2001). The Grayson Court held that because "the trial judge quickly interrupted [the venireperson's] statement" and because "it did later ask whether they could be fair, and the prospective members indicated that they could be," that the improper remark "was not so prejudicial as to warrant a mistrial, and the trial court did not abuse its discretion in denying that motion." Id. at 253. But in Grayson , the venireperson informed the trial court that he would be "automatically inclined to give the death penalty" because "apparently *635 he's [the defendant is] mentally off ...." Id. (emphasis in original). And in Evans v. State , 725 So.2d 613, 649 (Miss. 1997), this Court affirmed the trial court's denial of a mistrial, despite the trial court's having failed to admonish the jury, after a prospective juror said "that she would be uncomfortable and unable to serve as a juror because she found 'it very difficult to be in the same room with [Evans] ....' "
¶ 13. Here, Marks told the venire that "a year and a half, two years ago," he had testified against Chambliss "for breaking in." An unlawful breaking is the first element of the crime of burglary. We cannot know what prejudicial effect the venireperson's statement had on the jurors before any evidence was presented in support of the State's case. The improper comments made by venirepersons in Grayson and Evans did not speak to specific elements of the crimes for which the defendants were charged.
¶ 14. Judge Pickard correctly observed that Jefferson County is a small jurisdiction where "folks know each other." No one asked the prospective jurors how many of them knew other members of the venire; but it is inevitable, in one of our state's most sparsely populated counties, that many, if not all, the persons summoned for jury duty that day knew each other, including Marks, who was sitting on the first or second row in a very small courtroom. Regardless of whether some or all of the others knew Marks, he was their peer; they were all in the same boat, having been called for jury service. Some of them could identify with him even more, because they, too, had been burglary victims.
¶ 15. As she made the brief argument allowed by the court, defense counsel stated without contradiction that, in reaction to Marks's having told the judge that he'd recently been in that very court to testify against her client "for breaking in," "everybody laughed ." The prosecutor did not disagree with her description of the venire members' spontaneous reaction to Marks's statement that he had been to court to testify against Chambliss in "the same kind of case."
¶ 16. It seems likely that the trial court did not fully comprehend what Marks had said. His statement, "... the record will indicate what was said, ..." may indicate an incomplete understanding of the striking relevance that Marks's statement had to the case at hand-another accusation that Chambliss had "broken in" to someone else's property in Jefferson County. Any uncertainty about Marks's exact verbiage would have been clarified if the judge had followed the defense attorney's practical and timely suggestion "to see what the recorder picked up[.]"
¶ 17. But the observation by defense counsel that "everybody laughed" in response to Marks's very public revelation that Chambliss previously had been in the same sort of fix provides strong indication that the prospective jurors, who were seated in very close proximity to Mr. Marks, did hear and understand precisely what had been said. What is abundantly clear is that the prosecutor heard Marks clearly, as is evidenced by her having instantly risen to interrupt and to bring to an abrupt halt what she recognized as an inflammatory and prejudicial remark.
¶ 18. Neither the trial court nor we can determine, with any degree of reliability, whether Marks's comment prejudiced any one or more of Marks's fellow Jefferson Countians who ultimately served on the jury that convicted Chambliss, at least two of whom, like Marks, had themselves been burglary victims.
¶ 19. Accordingly, the trial court erred in overruling Chambliss's motion for a mistrial.
*636 At the very least, the judge, sua sponte, should have admonished the other venire members to disregard Marks's damaging revelation about the person over whom twelve of them were about to sit in judgment. Following such admonition, the court should have obtained their solemn commitment that they would do so.
¶ 20. I would grant certiorari .
KING, J., JOINS THIS SEPARATE WRITTEN STATEMENT.